UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES A. JULIAN,

    Plaintiff,

v.                                             Case No: 8:16-cv-3092-T-30TBM

ROLLINS, INC.,

    Defendant.
_____

## ORDER

James Julian entered into a Service Agreement and a separate Finance Agreement with Orkin Pest Control. The Service Agreement contained an arbitration clause; the Finance Agreement did not. Orkin assigned the Finance Agreement to Defendant Rollins, Inc., which Julian is suing for alleged statutory violations. Now Rollins moves to compel arbitration. Because the arbitration clause extends to the Finance Agreement under Florida law, Rollins' motion to compel arbitration should be granted.

## BACKGROUND

On November 11, 2014, Julian entered into a termite pest control service contract (the "Service Agreement") with Orkin. (Doc. 9, p. 4). Rather than paying the full contract price for the Service Agreement, Julian entered into a separate financing contract (the "Finance Agreement") the same day. (Doc. 9, pp. 6–7). Orkin then assigned the Finance Agreement to Rollins, Inc. (Doc. 1, ¶ 30; and Doc. 10).

The Service Agreement between Julian and Orkin contains an arbitration clause, which provides in pertinent part as follows:

> MEDIATION/ARBITRATION: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES PERFORMED BY ORKIN UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT, REGARDLESS OF WHETHER THE CONTROVERSY OR CLAIM AROSE BEFORE OR AFTER THE EXECUTION, TRANSFER, OR ACCEPTANCE OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY TORT AND STATUTORY CLAIMS, AND ANY CLAIMS FOR PERSONAL, OR BODILY INJURY OR DAMAGE TO REAL OR PERSONAL PROPERTY, SHALL BE SETTLED BY BINDING ARBITRATION. UNLESS THE PARTIES AGREE OTHERWISE, THE ARBITRATION SHALL BE ADMINISTERED UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND SHALL BE CONDUCTED BY AAA.… THE CUSTOMER AND ORKIN AGREE THAT THE ARBITRATOR SHALL FOLLOW THE SUBSTANTIVE LAW, INCLUDING THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE ARBITRATOR'S POWERS TO CONDUCT ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT SHALL BE LIMITED AS FOLLOWS: ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT WILL NOT BE CONSOLIDATED OR JOINED WITH ANY ACTION OR LEGAL PROCEEDING UNDER ANY OTHER AGREEMENT OR INVOLVING ANY OTHER PREMISES, AND WILL NOT PROCEED AS A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR SIMILAR REPRESENTATIVE ACTION … CUSTOMER AND ORKIN ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT.…

(Doc. 9). The Service Agreement also specifically references the Finance Agreement in the "Method of Payment" section, which has a check in the box next to "FINANCED – See Separate Finance Agreement." (Doc. 9). The Finance Agreement does not contain an arbitration clause.

Julian now claims that the Finance Agreement is usurious and that Rollins violated federal and Florida statutes protecting consumers when collecting on the Finance Agreement. In response, Rollins moves to compel arbitration pursuant to the arbitration clause in the Service Agreement.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006)); *accord AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 337-39 (2011); *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 72 (2010); *Inetianbor v. CashCall, Inc.,* 768 F.3d 1346, 1349 (11th Cir. 2014).

"Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable. The Supreme Court has upheld these so-called 'delegation provisions' as valid." *Rent-A-Center,* 561 U.S. at 68–70. And the Eleventh Circuit and the majority of other Circuits hold that explicit delegation provisions are unnecessary to delegate the issue of arbitrability to the arbitrator. Rather, incorporation of the arbitration rules is sufficient. *See Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332–33 (11th Cir. 2005); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). In *Terminix,* the Eleventh Circuit considered

3

whether an arbitration clause stating "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association" delegated the question of arbitrability to the arbitrator. 432 F.3d at 1332. The Eleventh Circuit concluded that "[b]y incorporating the AAA Rules … into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." *Id.*

The arbitration clause here incorporates the AAA Rules. Accordingly, *Terminix* compels the Court to delegate the question of arbitrability to the arbitrator. *Cyanotech,* 769 F.3d at 1311 (quoting *Terminix* and holding, "But when parties incorporate the rules of the Association into their contract, they 'clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies].'"). *See Supply Basket, Inc. v. Glob. Equip. Co.*, No. 1:13-CV-3220-RWS, 2014 WL 2515345, at *2 (N.D. Ga. June 4, 2014) (noting that incorporation of AAA rules generally, without identifying any particular subject-specific rules was sufficient to provide "clear and unmistakable evidence of intent to delegate the determination of arbitrability to the arbitrator.").

Finally, motions to compel arbitration are reviewed under the summary judgment standard. *See Johnson v. KeyBank Nat'l Assoc.,* 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "'a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'") (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.,* 272 F. App'x 782, 785-86 (11th Cir. 2008)). Thus, a court may consider information outside the pleadings for purposes of resolving the motion.

4

**DISCUSSION**

The only issue properly before this Court is whether Rollins has standing to enforce the arbitration clause in the Service Agreement.[1] This issue is governed by Florida law. *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011); *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011). The parties here do not dispute that Rollins is not a signatory to the Service Agreement, which contains the arbitration provision. And the parties do not dispute that Rollins is the assignee of the Finance Agreement. The only disputes are whether the arbitration clause applies to the Finance Agreement, and whether Rollins's status as assignee of the Finance Agreement gives it the ability to enforce the arbitration clause in the Service Agreement.

The Court concludes that the arbitration clause does apply to the Finance Agreement. "For a contract's arbitration clause to extend to another document, the contract must expressly refer to the document or sufficiently describe the document so that the

---

[1] Both parties spend ample space arguing whether the claims raised by Julian are arbitrable. But *Terminix* and its progeny dictate that that particular issue is reserved for the arbitrator when the arbitration provision specifically incorporates the AAA Rules. *Terminix*, 432 F.3d at 1332; *Cyanotech*, 769 F.3d at 1311. And Rule 14(a) of the AAA Consumer Arbitration Rules provides as follows:

> R-14. Jurisdiction
> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*.

Am. Arbitration Ass'n, Consumer Arbitration Rules, https://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTAGE2021424 (last accessed Feb. 7, 2017) (emphasis added). Because the parties contracted to have the arbitration panel determine whether claims are arbitrable, this Court must give deference to the parties' choice—even if the parties are seemingly unaware of their decision.

document could be interpreted as part of the contract." *Phoenix Motor Co. v. Desert Diamond Players Club, Inc.*, 144 So. 3d 694, 697 (Fla. Dist. Ct. App. 2014); *see also Morse Operations, Inc. v. Sonar Radio Corp.,* 449 So.2d 1002 (Fla. Dist. Ct. App. 1984); and *Passerrello v. Robert L. Lipton, Inc.*, 690 So. 2d 610 (Fla. Dist. Ct. App. 1997).

Here, the arbitration clause in the Service Agreement extends to the Finance Agreement. The Service Agreement specifically references the Finance Agreement in the "Method of Payment" section. And the arbitration provision pertains to "ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES PERFORMED BY ORKIN UNDER THIS AGREEMENT OR *ANY OTHER AGREEMENT*…." Because the arbitration provision is applicable to all agreements, and the Finance Agreement is referenced in the Service Agreement, the arbitration clause applies to claims arising under the Finance Agreement.

Having determined the arbitration clause applies to the Finance Agreement, the only remaining issue is whether Rollins can enforce the arbitration clause. Admittedly, this issue is somewhat less clear. On one hand, Rollins argues the line of Florida cases that hold an assignee stands in the shoes of and has the same rights as did the assignor. *E.g. Nolan v. MIA Real Holdings, LLC*, 185 So.3d 1275 (Fla. Dist. Ct. App. 2016). On the other hand, Julian relies on the line of cases holding non-parties cannot force signatories to a contract containing an arbitration clause to arbitrate, unless an exception to this general rule applies. *E.g. Florida Power & Light Co. v. Rd. Rock, Inc.*, 920 So. 2d 201, 203 (Fla. Dist. Ct. App. 2006). The discord between these lines of cases, it seems, is that some courts treat assignees as a party to the contract while others consider an assignee a non-signatory.

6

While the law seems unsettled, the Court has found a case that it believes controls under these facts. In *Passerrello*, a Florida appellate court held that a bank that was assigned a financing agreement on an automobile could enforce an arbitration provision in the sales contract between the buyer and dealer over the buyer's objections. 690 So. 2d at 611. Notably, the financing agreement in *Passerrello* did not contain an arbitration provision; rather, the arbitration provision in the sales contract was extended to the financing agreement in much the same way as this Court concluded the arbitration clause in the Service Agreement extends into the Finance Agreement. *Id.*; *see also Phoenix Motor Co.*, 144 So. 3d at 697 (discussing *Passerrello* in greater detail). Just as in *Passerrello*, this Court concludes Rollins, as assignee of the Finance Agreement, can compel arbitration.

Even if *Passerrello* were not controlling, the Court concludes the doctrine of equitable estoppel would compel the same result. *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 212 (Fla. Dist. Ct. App. 2003) (holding an arbitration clause containing the phrase "arising out of or relating to" was broad enough to include non-signatories); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, No. 15-15060, 2017 WL 192690, at *4 (11th Cir. Jan. 18, 2017) (discussing Florida law on equitable estoppel); and *Betancourt v. Green Tree Servicing, LLC*, No. 8:13-CV-2759-T-30AEP, 2013 WL 6644560, at *2–4 (M.D. Fla. Dec. 17, 2013).

Accordingly, it is therefore ORDERED AND ADJUDGED that:

1. Defendant Rollins, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 8) is GRANTED.

2. Plaintiff James Julian's Motion to Strike Plaintiff's Reply Memorandum or, in the Alternative, for Leave to File a Surreply Memorandum (Doc. 26) is DENIED.

3. The Clerk is directed to administratively close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of February, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record